Sansom v. Ball.

---

*459]    *SANSOM *v.* BALL.

### *Insurable interest.—General average.*

Freight advanced, in consideration of which, the person making the advances, acquires a right to a certain proportion of the tonnage, is an insurable interest.

Where salvage is decreed, on a re-capture, and the vessel is restored, on payment of a sum of money, by way of compromise with the re-captors, this is matter of general average, to which underwriters on "freight advanced," must contribute.

CASE, on a policy of insurance, upon the freight of the ship Richmond, for a voyage at and from Philadelphia to Batavia, and thence back again. The premium was twenty per cent., " to return five per cent., if the ship pro- ceeds only to Batavia and back to Philadelphia, and no loss happens ; " and the insurance was declared to be " on freight advanced here, and which, by agreement, is valued at $13,500." The policy also contained the usual clause, that there should be no average loss recovered, if less than five per cent., unless it was general.

On the trial of the cause, it appeared, that the Richmond was owned by Messrs. Jesse and Robert Waln ; that the plaintiff purchased from the own- ers three-eighths of the tonnage of the ship, for the voyage, at the price of $10,837.50, which was paid before the ship sailed ; that the Richmond pro- ceeded safely to Batavia, but on her return thence to Philadelphia, she was captured by a French privateer, who ordered her to Guadaloupe, and she was afterwards retaken by a British ship of war, who carried her into Mar- tinique; that upon a libel for salvage, at Martinique, one-half of the full value of the ship and cargo was decreed to the re-captors, and the claimants charged with all costs ; and that by agreement between the master and the super- cargo, on the one hand, and the re-captors, on the other, one-half of the car- go was specifically delivered to the latter, and 2750*l.* fixed for the salvage

Sansom v. Ball.

on the ship, which was paid by a draft on the owners at Philadelphia, secured by an hypothecation.

The present suit was brought to recover an average loss; and the case being submitted for the opinion of the court, two questions were discussed : 1st. Whether the subject described in the policy was an insurable inter est ? 2d. Whether, under all the circumstances of the case, the insurers were liable for a general average ? (a)

1st. The *plaintiff*'s counsel, contending that the interest was insurable, urged : 1st. That it was a lawful interest. It is the payment of a sum of money, for the benefit of bringing home a return-cargo, either as owner, or upon freight. There is no general law, no law of America or of England, against the payment of freight in advance, whatever may be the law of France (2 Marsh. 644) ; and there is scarcely a subject of property, [*460 for which *a price is paid and received, that may not be the subject of insurance, unless where general policy forbids ; as in the case of seamen's wages. Park 9 (5th edit.) ; Ib. 103. Nor can this be considered as a double insurance ; for it is a distinct interest ; and different insurances may be effected by different persons, having different rights, in the same prop erty. 1 Marsh. 282 ; Park 103. Nor is it a loan upon bottomry ; for it was not advanced on the pledge of the ship herself, but for the use of her ton nage ; and it is immaterial, that the valuation in the policy exceeds the actual cost ; as the plaintiff had a right to cover the premium, charges, interest and profit, as well as his advance. 2d. The interest insured was liable to hazard and loss ; and therefore, it was insurable. If the ship had been totally lost, the plaintiff's use of the tonnage, for which he had paid, was gone, and the owner of the ship could not be compelled to refund. 3d. The interest is well described in the policy. It is not a purchase of a share in the vessel ; but of a right to convey goods in her, upon the voyage insured ; and the transaction does not violate the registering act, on the point of ownership (1 U. S. Stat. 294, § 14) ; or even on the supposition of its amounting to a sale of a part of the vessel, it only forfeits the American privileges ; it does not affect the insurable quality of the interest acquired. But again, when it is objected, that none but the owners of a ship can recover upon an insurance of freight ; the objection obviously arises from confounding the purchase of the right of freight, paid in advance, with freight to be earned and received, at the end of the voyage. It is clear, that the owners of the ship could not insure (and certainly they did not attempt it) as freight, the tonnage pur chased by the plaintiff. And when the plaintiff proposed the insurance, the intention of the parties, according to the facts disclosed, without objection at the time, ought to govern the construction of the policy. Park 439, 4th edit.

2d. On the second point, the plaintiff's counsel insisted, that whether the salvage was considered as freight, or as a charge upon goods, the interest

(a) Mr. Fitzsimmons, a merchant and underwriter of great intelligence and experi ence, proved, at the trial of the cause, that the interest acquired by the plaintiff in the tonnage of the ship, was a well-known subject of insurance in Philadelphia. He also proved that an adjustment of the average loss, on the present voyage, had been made; in which the insurance companies, and most of the private underwriters, had acquiesced. On the effect of the adjustment, the plaintiffs cited Park 118; Marsh. 244.

Sansom v. Ball.

insured was liable to a general average ; and, if so, the underwriters on the present policy were bound to furnish an indemnity. Ship, freight and cargo contribute to general average. Park 121 ; Abbot 215 (Am. Edit.) ; 1 East 220. If it is essential to a general average, that the loss should be voluntarily incurred surely the payment of salvage, upon a re-capture, is an act as voluntary, as throwing goods into the sea, upon the coercion of a tempest. Nay, it is within the express stipulation of the policy, that the assured shall labor to recover the property from any jeopardy, in which it is involved, by a risk insured against. Park 140-1, 123 ; Abbot 218 ; 2 Burr. 1213; 1 Mag. 245; 1 Rob. 86. And if ship, freight and goods should all contribute to a general average, the plaintiff's interest in the use of the ship could only contribute in this way ; and contributing at all, is \*461] entitled \*to an indemnity. 2 Marsh. 460 ; Park 124-6 (4th Edit) ; Abbot 290-1.

1st. The *defendant's* counsel, contending that the interest was not insurable, argued, that it was in the nature of bottomry ; and therefore, not insurable, unless specifically ; and even then, there could be no recovery for an average, but only for a total loss ; that the idea of freight is inseparable from a completion of the voyage, and none but the owner of the ship can recover freight ; and that there is no instance of a person, who is merely liable to pay freight, being liable to contribute to the payment of a general average. Abbot 179 ; 2 Bos. & Pul. 321-2 ; Marsh. 644 ; 1 Ibid. 93. If the purchase is considered a purchase of part of the vessel, then no legitimate contract can be founded on it, unless the vessel is registered anew. (1 U. S. Stat. 294, § 14.)

2d. On the second point, the defendant's counsel contended, that the decree of the court only affected the ship and cargo (not the freight) with the payment of salvage ; that nothing but a general average can affect freight ; and a general average calls for a voluntary sacrifice of a part, to preserve the rest of the property ; whereas, the loss on the salvage was compulsory. (1 Johns. 406, 410 ; Abbot 220 ; Park 122, 130.)

The chief justice, after stating the general facts, delivered the unanimous opinion of the court, in the following terms :

TILGHMAN, Chief Justice.—In this case, two questions have been made : 1st. Had the plaintiff an insurable interest ? 2d. If it was insurable, was it liable to a general average?

I. In order to determine whether the plaintiff's interest was insurable, we must first ascertain the nature of it. It seems to be a kind of interest, not much known in Europe, though well known in this city. The plaintiff advanced a sum of money to the owners of the ship, in consideration of which they gave him a right to fill up three-eighths of the tonnage of the ship, for that voyage, with goods, either his own or the property of others. It is called in the policy "freight advanced," an expression well calculated to show its meaning. All countries, and even all cities, have singularities of expression. All new inventions, either in commerce or the arts, give rise to new modes of speech, which, when once introduced into contracts, are recognised by courts of justice, whose duty it is to carry into execution the intention of the contracting parties. Now, what is there in this interest, which should exclude it from the benefit of **insurance** ? there is nothing

OF PENNSYLVANIA.

Sansom v. Ball.

unlawful in it. It is subject to loss; for whether the plaintiff used the ton-nage for the transportation of his own goods, or of the goods of others, he would lose his money, unless the ship performed the voyage in safety. Indeed, I think Mr. *Ingersoll*, in *arguing for the defendant, con- [*462 ceded that the plaintiff's interest might have been insured, if it had been properly described; but he conceived it to be in the nature of bot-tomry. This it certainly cannot be; there was no loan of money. Messrs. Walns were obliged to make no payment to the plaintiff, but the plaintiff was entitled to make what he could from the tonnage he had purchased. Whether it was more or less, Messrs. Walns had nothing to do with it. The testimony of Mr. Fitzsimmons goes far towards proving, that the plaintiff's interest was well described, and was a proper object of insurance. In the case of *Gregory* v. *Christie* (Park 11), my Lord MANSFIELD thus expresses himself: " I should think that the words ' goods, specie and effects,' did not extend to the plaintiff's interest, if we were only to consider the words by themselves. But here is an express usage, which must govern our decision. A great many captains in the East India service swear, that this kind of interest is always insured in this way." Now, though there have not been a great many witnesses in this cause, yet there has been one, very much conversant in the business of insurance, who stands uncontradicted. Upon this first point, therefore, the insurability of the plaintiff's interest, whether it is considered on principle, or on usage, I have no doubt, but the law is with the plaintiff.

II. But was the plaintiff's interest liable to general average? General average, or general contribution, is founded on principles of justice and sound policy. It arises, when a sacrifice of part has been made for the pre-servation of the residue, or when money is expended, to preserve the whole. Thus, the loss occasioned by cutting away of masts, or throwing goods overboard, to lighten the ship in a storm, or money paid to redeem ship and cargo, which had been captured, are subjects of general average; ship, cargo and freight have been benefited, and therefore, all must contrib-ute. In the present instance, a compromise was made with the re-captors. Was it for the benefit of all persons concerned in ship, cargo and freight? for if it was, it falls within the rule of general average. It appears to me, that it was for the benefit of all concerned. It prevented a sale of both ship and cargo, which must have injured all concerned. It would certainly have injured the plaintiff, who had goods on board to a large amount, and he had paid in advance, for the freight of these goods. Of whatever nature the plaintiff's interest was, it was liable to salvage. Sir William Scott's opinion (*a*) is, that salvage is due, for ship, cargo and freight. But the defendant's counsel object, that general average never arises but from the voluntary act of man, and here, say they, was no voluntary act; for salvage was decreed by the court. This argument is rather too refined. Let us consider it. It is true, that the agency and consent of man must intervene, to produce a general average; but this agency and consent, though in one sense voluntary, are upon the whole, involuntary. When life is at stake, the mariner will- [*463 ingly *throws gold and diamonds into the sea. But was he willing to encounter the storm, which produced this dire necessity? General aver-

---

(*a*) The Racehorse, 3 Rob. 86.

age always arises from actions produced by necessity. In the case before us, there was a capture, re-capture, and decree of salvage. The master and supercargo consented, under these circumstances, to a measure, which produced a general benefit. They surely exercised as much volition, as if they had thrown half the cargo overboard in a storm. Suppose, they had stood still, and suffered the ship and cargo to be sold, the underwriters would then have had to answer for the whole freight: it it better for them to be subject to a general contribution.

We are of opinion, that the plaintiff is entitled to recover on this policy, according to his demand.

*Lewis, Rawle* and *J. Sergeant,* for the plaintiff. *McKean* (Attorney-General) and *Ingersoll,* for the defendant.